IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  25-cr-40034-JPG |
| v. | ) |
| | ) |
| TIMOTHY BRANDON PARSONS, | ) |
| | ) |
| Defendant. | ) |

### INFORMATION

The United States charges:

### COUNT 1
### Conspiracy to Defraud the United States

### BACKGROUND

At times relevant to this Information:

1. The MC#1 Mine (hereinafter "MC#1 Mine" or "the mine") was an underground coal mine in Franklin County, Illinois, in the Southern District of Illinois.

2. The MC#1 Mine was a "mine "as defined by the Federal Mine Safety and Health Act of 1977, as augmented by the MINER Act of 2006 (the "Mine Act"), 30 U.S.C. § 802(d), and was subject to the provisions of the Mine Act because Company A used equipment manufactured outside the State of Illinois that entered and affected interstate commerce and the products of the mine entered and affected interstate commerce. 30 U.S.C. § 803.

3. Company A was the "operator" of the MC#1 Mine as that term is defined by 30 U.S.C. 802(d).

4. Defendant TIMOTHY BRANDON PARSONS was the General Manager of the MC#1 Mine. Defendant Brandon Parsons was an "agent" of Company A, as that term is defined by 30 U.S.C. 802(e).

5. The Mine Act and regulations promulgated by the Secretary of Labor, acting through the Mine Safety and Health Administration ("MSHA"), set forth mandatory health and safety standards that each operator and its agents must adhere. Included in those standards of are requirements involving the mandatory roof control plans, ventilation plans, emergency response plans, examinations, and record keeping. Many of those mandatory standards relate to roof falls, fires, and explosions.

6. To ensure that all mines are operated in a safe manner, preshift and on-shift examinations are required every 8-hour interval. 30 C.F.R. § § 75.360 and 75.362. The preshift and on-shift examinations must be conducted by a certified person and must identify hazardous conditions in the mine, violations of mandatory health and safety standards, test for methane and oxygen deficiency, and determine if the air is moving in the proper direction. The person conducting the examination certifies the examination by making a record which shall include a record of hazardous conditions and their locations. The record must further record the action taken to correct any hazardous conditions found during the examination. Each record shall be countersigned by a mine foreman or equivalent mine official. 30 C.F.R. §§ 75.360(g) and 75.362(g).

7. The Mine Act further requires that emergency response plans include tracking the locations of all underground personnel. 30 U.S.C. § 876(b)(2)(E)(ii).

8. Mine operators and their agents are required to immediately contact MSHA at once and without delay and within 15 minutes once the operator knows and should know that an accident has occurred. 30 C.F.R. 50.10. "Accidents" in underground mines include unplanned fires that are not extinguished within 10 minutes of discovery. 30 C.F.R. § 50.2.

9.  MSHA's mandatory standards also require that the responsible person designated by the mine shall initiate and conduct an immediate mine evacuation when there is a mine emergency which presents an imminent danger to miners due to fire. 30 C.F.R. 75.1501.

## THE CONSPIRACY

10.  Between on or about August 12, 2021, and on or about August 15, 2021, in the Southern District of Illinois, defendant TIMOTHY BRANDON PARSONS, Company A, and other Company A agents, and responsible persons did knowingly, willfully, and voluntarily, combine, conspire, confederate and agree together and with other persons, both known and unknown to the grand jury, to defraud the United States and an agency thereof by impeding and impairing the governmental functions of MSHA in its lawful and legitimate function in the administration and enforcement of the Mine Act.

### Objects of the Conspiracy

11.  The principal object of the conspiracy was to deceive MSHA in the enforcement and administration of the Mine Act and the regulations duly promulgated thereunder, so that Company A could continue to mine coal and conceal violations of the Mine Act and the regulations promulgated thereunder, and thereby prevent the issuance of orders and citations by MSHA pursuant to the Mine Act, 30 U.S.C. §§ 813(k) and 814.

### Manner and Means of the Conspiracy

12.  The members of the conspiracy used various manners and means to effect the object of the conspiracy, including, but not limited to, the following:

    a.  Limiting and discouraging communications within the mine that would alert miners to hazardous conditions in the mine.

b. Concealing their underground location by not carrying tracking devices designed to track and locate underground personnel entrapped in the mine that would have created a record of the presence and location of members of the conspiracy.

c. Engaging in ad hoc firefighting activities rather than implementing the approved safety plans to prevent widespread notification of a fire within the mine.

d. Failing to notify MSHA at once and without delay and within 15 minutes once Company A, through its agents, knew or should have known that an accident had occurred, including, but not limited to, an unplanned fire that could not be extinguished within 10 minutes of discovery.

e. Falsifying pre-shift and onshift exam reports by failing to report hazards and violations and falsely noting "none" in the section of the pre-shift and onshift exam reports that provided for recording hazards and violations.

f. Misrepresenting to miners that a mine equipment malfunction was the reason for ceasing coal mining operations rather than alerting them that there was an unplanned fire in the mine that could not be extinguished within 10 minutes.

g. Misrepresenting the nature and duration of a fire to MSHA officials responding to an anonymous report of an unplanned fire in the mine that could not be extinguished in 15 minutes.

## Overt Acts

13. In furtherance of the conspiracy and to effect the objects thereof, defendant BRANDON PARSONS and co-conspirators performed in the Southern District of Illinois, among others, the following overt acts:

a. On or about August 12 to August 13, 2021, members of the conspiracy and others acting at their direction failed to report to MSHA a collapse of secondary roof

4

support structure in the Mine that restricted miner access to an established escapeway in the mine.

   b.  On or about August 12, 2021, members of the conspiracy and others acting at their direction failed to record the collapse of secondary roof support structure in the third shift pre-shift exam reports for the mine and, instead, falsely recorded "none" in the sections of the pre-shift exam report used for designating hazardous condition.

   c.  On or about August 12, 2021, members of the conspiracy and others acting at their direction failed to record the collapse of secondary roof support structure in the third shift on-shift exam reports for the mine and, instead, falsely recorded "none" in the sections of the on-shift exam reports used for designating hazardous condition.

   d.  On or about August 13, 2021, members of the conspiracy and others acting at their direction failed to record the collapse of secondary roof support structure in the first shift pre-shift exam reports for the mine and, instead, falsely recorded "none" in the sections of the pre-shift exam report used for designating hazardous condition.

   e.  On or about August 13, 2021, members of the conspiracy and others acting at their direction failed to record the collapse of secondary roof support structure in the first shift on-shift exam report for the mine and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition.

   f.  On or about August 13, 2021, members of the conspiracy and others acting at their direction failed to record the collapse of secondary roof support structure in the first shift on-shift exam report for the mine and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition.

   g.  On or about August 13, 2021, members of the conspiracy and others acting at their direction failed to notify MSHA at once and without delay and within 15

minutes once Company A, through its agents, knew and should have known that an unplanned fire that could not be extinguished within 10 minutes of discovery.

  h.  On or about August 13, 2021, members of the conspiracy and others acting at their direction signed the first shift pre-shift examination report that failed to record the hazardous condition of an unplanned fire in the mine that could not be extinguished within 10 minutes of discovery.

  i.  On or about August 13, 2021, members of the conspiracy and others acting at their direction signed the first shift on-shift examination report that failed to record the hazardous condition of an unplanned fire in the mine that could not be extinguished within 10 minutes of discovery and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition

  j.  On or about August 13, 2021, members of the conspiracy and others acting at their direction signed the second shift pre-shift examination report that failed to record the hazardous condition of an unplanned fire in the mine that could not be extinguished within 10 minutes of discovery and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition.

  k.  On or about August 13, 2021, members of the conspiracy and others acting at their direction signed the second shift on-shift examination report that failed to record the hazardous condition of an unplanned fire in the mine that could not be extinguished within 10 minutes of discovery and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition.

  l.  On or about August 13, 2021, members of the conspiracy and others acting at their direction signed the third shift pre-shift examination report that failed to record the hazardous condition of an unplanned fire in the mine that could not be

extinguished within 10 minutes of discovery and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition.

   m.   On or about August 13, 2021, members of the conspiracy and others acting at their direction signed the third shift on-shift examination report that failed to record the hazardous condition of an unplanned fire in the mine that could not be extinguished within 10 minutes of discovery and, instead, falsely recorded "none" in the sections of the on-shift exam report used for designating hazardous condition.

   n.   On or about August 13, 2021, defendant TIMOTHY BRANDON PARSONS, Company A and other members of the conspiracy and others acting at their direction continued to mine coal and directed others to continue to mine coal and failed to follow MC#1 Mine's approved Emergency Evacuation and Firefighting Plan and initiate and conduct an immediate mine evacuation after they discovered an unplanned fire that could not be extinguished within 10 minutes of discovery.

   o.   On or about August 13, 2021, members of the conspiracy, and others acting at their direction knowingly went underground in the MC#1 Mine without carrying a device intended to track their location in the mine.

   p.   On or about August 14, 2021, members of the conspiracy and others acting at their direction knowingly removed their devices intended to track their location underground while underground in the MC#1 Mine.

   q.   On or about August 14, 2021, defendant TIMOTHY BRANDON PARSONS, in order to evacuate the MC#1 Mine, caused others to notify MC#1 miners that equipment, that is, the slope belt, was broken and sent the hourly miners home when, in truth and in fact, the slope belt was not broken, and the fire had not been extinguished.

  r. On or about August 14, 2021, members of the conspiracy, including defendant TIMOTHY BRANDON PARSONS, went underground in the MC#1 Mine and engaged in firefighting activities after the hourly workers had been cleared from the Mine. Defendant and other members of the conspiracy then left the Mine before the arrival of MSHA authorities at the underground location of the fire.

  s. On or about August 15, 2021, and again on or about August 17, 2021, after MSHA had ordered that all miners be withdrawn from underground, members of the conspiracy returned underground unbeknownst to MSHA to adjust airflow in the mine near the fire and affect MSHA's efforts to determine whether the fire continued to burn underground.

All in violation of Title 18, United States Code, Section 371.

        STEVEN D. WEINHOEFT
        United States Attorney

    By: *Kevin F. Burke*
       Kevin F. Burke
       Assistant United States Attorney

       ADAM R.F. GUSTAFSON
       Acting Assistant Attorney General
       Environment and Natural Resources Division
       United States Department of Justice

    By: *Matthew T. Morris*
       Matthew T. Morris
       Senior Trial Attorney
       Environmental Crimes Section

Recommended Bond: Release on own recognizance.